UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAROLEE BRADY HARTMAN,** *et al.***,** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**ANTONY BLINKEN,** *et al.***,**[1] )<br>)<br>**Defendants.** )<br>) | Case No. 77-cv-2019 (APM) |

**MEMORANDUM OPINION AND ORDER**

**I.**

This case has a long and remarkable history, the many chapters of which the court need not recount here. The court's task at this juncture is limited. In this latest, and hopefully final, installment of the *Hartman* litigation, which began in 1977, the court is asked to determine whether a multiplier should be applied to the attorneys' fees agreed upon by the parties, known as the base "lodestar."

A little over two years ago, when this case was last before the court, Plaintiffs sought an expanded fee award—roughly $34 million in additional fees beyond those awarded in nearly 30 interim fee payments over the lifespan of this 40-plus-year litigation. This court determined that, based on a consent decree reached by the parties, the fees in this case would be determined by the lodestar method employed in fee-shifting cases. While the court agreed with Plaintiffs that, as of 2020, the existing lodestar was inadequate to fairly compensate Plaintiffs' counsel, the court could not award an enhancement because the lodestar as calculated was flawed and the court

---

[1] Antony Blinken, in his official capacity as Secretary of the United States Department of State, is substituted as Defendant Madeleine K. Albright under Federal Rule of Civil Procedure 25(d).

lacked necessary information.  The court mapped out the deficiencies in the lodestar calculation and provided a roadmap for the parties' negotiations going forward, in the hopes that they could "reach an agreement on what the proper lodestar should be, as well as any compensation for delay."

It appears the parties were able to do just that.  In the intervening two years, the parties reached a series of agreements, memorialized in stipulations entered by the court, to (1) increase the lodestar fee by $9 million, (2) "completely and finally resolve" outstanding issues related to interest, true market value, and delay that this court had identified, and (3) agree to a base lodestar value of $19 million to be used for purposes of any potential motion for enhancement.

Plaintiffs acknowledge the various compensation issues that have been resolved by stipulation but nonetheless assert that "this is the rare and exceptional case" in which an enhancement to the lodestar is appropriate.  Plaintiffs thus seek a multiplier of the court's choosing, within a specified range, to enhance the lodestar based on superior lawyering and exceptional results.  Pls.' Mot. for a Lodestar Enhancement, ECF No. 1118.  For the reasons that follow, the court denies their request.

## II.

The lengthy factual history in this case has been summarized in many prior opinions by this court and others.[2]  Accordingly, the court will limit its discussion to the facts and procedural history relevant to this enhancement motion.

In 2000, the parties entered into a consent decree that provided for a $508 million settlement fund for the class and for "reasonable attorneys' fees, expenses, and costs."  Consent

---

[2] As the court summarized in its earlier opinion in this matter, "United States District Judge Charles R. Richey presided over the case until his death in 1997, after which the case was assigned to United States District Judge James Robertson, who presided over the case until his retirement from the bench in 2010.  There was no permanently-assigned presiding judge from 2010 until October 16, 2019, when [this court] was assigned [] the case shortly after Plaintiffs filed their pending motion for an additional fee award." *Hartman v. Pompeo*, 2020 WL 6445873, at *1 & n.3 (D.D.C. Nov. 3, 2020) (quoting Defs.' Corrected Opp'n to Pls.' Mot. for Final Determination of Attys.' Fees, ECF No. 1085-1, at 2, and citing to and summarizing prior opinions).

Decree, ECF No. 866, at ¶ 8.  The parties also settled more than 20 interim attorneys' fee requests.  *Hartman v. Pompeo*, 2020 WL 6445873, *4 (D.D.C. Nov. 3, 2020).  After the last payment from the $508 million settlement fund issued in June of 2018, Plaintiffs filed a motion before this court for a final determination of attorneys' fees.  *See* Pls.' Mem. in Supp. of Pls.' Mot. for a Final Determination of Attys.' Fees, ECF No. 1081 [hereinafter Pls.' Mot.], at 3.  Pursuant to that motion, Plaintiffs sought an additional fee award of more than $34 million as an enhancement to the existing lodestar.  *Id.* at 1, 43.

The court denied Plaintiffs' request.  In its November 2020 opinion, the court engaged in an extensive analysis of the fees already paid, the fee matrices from which they were and could be derived, and the payment shortfalls due to attendant delay- and inflation-related issues.  *See generally Hartman*, 2020 WL 6445873.  Based on this review, the court found that the interim lodestar fee that had been awarded up to that point was "likely not an adequate measure of class counsel's true market value." *Id.* at *1.  The court could not, however, grant Plaintiffs' counsel's requested enhancement because Plaintiffs had not identified the information necessary for the court to modify the appropriate hourly fees to reflect the prevailing market rate, adjusted for delay and inflation.  *Id.* at *19.  Instead, as summarized by the parties, "the Court sent plaintiffs back to the drawing board to present a revised fee petition that (1) adjusted the USAO *Laffey* Matrix[3] rates used to calculate interim fee awards for over 20 years, and that included an amount to compensate for the delay in receiving the shortfall caused by use of those rates; and (2) to arrive at the difference between the interest thus far received on interim fee awards computed at the 1-

---

[3] The USAO *Laffey* Matrix is a fee matrix, developed in the wake of a major employment discrimination class action, which "recommends a presumptive maximum hourly rate for Washington, D.C.-area attorneys engaged in 'complex federal litigation.'"  *Hartman*, 2020 WL 6445873 at *11.  The USAO updates the matrix for inflation based on the Consumer Price Index for All Urban Consumers.  *Id.*

3

year Treasury bill rate and the prime rate." *See* Joint Stip., ECF No. 1108 [hereinafter First Joint Stip.].

Following the court's November 2020 decision, the parties reached three stipulations. First, the parties stipulated that Defendants would pay Plaintiffs $9,033,600 to resolve any issues concerning the use of the below-market *Laffey* Matrix rates and the Treasury bill interest rate. First Joint Stip at 1. Second, the parties agreed that the "value of the base lodestar" for purposes of this enhancement motion is $19 million. Joint Stip., ECF No. 1116 [hereinafter Second Joint Stip.], at 1. This "stipulated lodestar represents the parties' agreement that if an enhancement is appropriate . . . it would be for the services required to secure the settlement, excluding the time required to resolve the individual relief of claimants with judgments. The fees that were previously enhanced (the 1980-1990 time for [Plaintiffs' lead counsel] Mr. Frederickson and Ms. Brackshaw) were also excluded." Errata, ECF No. 1119, Pls.' Mem. of Law in Supp. of a Lodestar Enhancement, ECF No. 1119-1 [hereinafter Pls.' Mem.], at 4 n.4.[4] Finally, and most critically, the parties stipulated that "they have completely and finally resolved any claim for fees or costs based on a contention (1) that Plaintiffs' receipt of fees was unreasonably delayed, (2) that the lodestar fees Plaintiffs have been paid did not reflect counsel's true market value, and (3) that the interest paid on interim fee awards in this litigation was insufficient." Joint Stip., ECF No. 1117 [hereinafter Third Joint Stip.], at 1.[5] The parties identified as the only remaining issue in dispute a potential "enhancement of the lodestar for superior attorney performance and exceptional results." *Id.*; First Joint Stip. at 1.

---

[4] A judge previously assigned to this case awarded Plaintiffs' counsel a 25% enhancement of the lodestar for work done between 1980 and 1990. *See Hartman*, 2020 WL 6445873, at *10 n.9 (citing *Hartman v. Duffey*, 973 F. Supp. 199, 202 (D.D.C. 1997)).

[5] In their Third Joint Stipulation, the parties also stipulated to a settlement payment for attorneys' fees and costs for fees counsel, Steptoe & Johnson LLP, from November 2017 to October 2021. Third Joint Stip. at 1.

After this latest negotiated settlement, the total amount of fees, expenses, and interest that the government has paid Plaintiffs' counsel over the lifetime of this litigation now exceeds $35.9 million. Plaintiffs have acknowledged in their motion that "[t]he basic lodestar fees from the inception of the case through October 2021 have been paid." Pls.' Mem. at 3.

### III.

The court's inquiry here is guided by the D.C. Circuit's "three-part analysis to assess appropriate fee awards under fee-shifting statutes in cases involving complex federal litigation." *Salazar v. District of Columbia*, 809 F.3d 58, 61 (D.C. Cir. 2015).[6] "A court must: (1) determine the 'number of hours reasonably expended in litigation'; (2) set the 'reasonable hourly rate'; and (3) use multipliers as 'warranted.'" *Id.* (quoting *Eley v. D.C.*, 793 F.3d 97, 100 (D.C. Cir. 2015)). Prongs one and two describe what is referred to as the "base lodestar." The lodestar calculation "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). As discussed, the parties have stipulated to the applicable lodestar, so *Salazar* prongs one and two are not at issue.

This case concerns the third *Salazar* prong: whether a multiplier is warranted. "[I]n some cases of exceptional success an enhanced award may be justified." *Id.* at 435. Any such enhancement, however, "must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal." *Perdue v. Kenny A.*, 559 U.S. 542, 555 (2010). The burden of proving entitlement to a lodestar enhancement rests with the fee applicant, *id.* at 553, and there is a "strong presumption" that lodestar fees are sufficient, *Pennsylvania v. Del. Valley Citizens' Council for Clear Air*, 478 U.S. 546, 565 (1986). To overcome this presumption, "a fee applicant

---

[6] Although as a technical matter the fee here is governed by a negotiated settlement, not Title VII's fee-shifting provision, *see Hartman*, 2020 WL 6445873, at *5–6, the parties have agreed that caselaw regarding awards under fee-shifting statutes is applicable here, Defs.' Opp'n to Pls.' Mot., ECF No. 1120, at 4.

seeking an enhancement must produce 'specific evidence' that supports the award." *Perdue*, 559 U.S. at 553 (quoting *Blum v. Stenson*, 465 U.S. 886, 899–900 (1984)).

Critically, the lodestar may not be enhanced due to a factor that is already subsumed in the lodestar calculation, and "the lodestar figure includes most, if not all, of the relevant factors." *Id.* (quoting *Del. Valley*, 478 U.S. at 566). For example, "the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably [are] fully reflected in the number of billable hours recorded by counsel." *Id.* Put differently, an enhancement is improper unless the fee applicant succeeds in "identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Id.* at 546; *see also Blum*, 465 U.S. at 899 (stating that an enhancement is appropriate "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to [what] one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional'"). Enhancements should not be awarded in the absence of "specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Perdue*, 559 U.S. at 554 (quoting *Blum*, 465 U.S. at 897).

## IV.

Plaintiffs assert that exceptional results and superior lawyering justify enhancement of the lodestar. *See* Pls.' Mem. at 10–12. They contend that the following factors are not subsumed in the lodestar: (1) the results obtained; (2) "the preclusion of other employment by committing both human and capital resources to the case"; (3) "the duration of the case"; (4) "the 'undesirability' of the case"; and (5) "awards in similar cases." *Id.* at 10. Plaintiffs then posit various factual features of the decades' long litigation that they assert constitute proof of these enhancement factors. Defendants contest the characterization and import of these case features, *see* Defs.'

6

Opp'n to Pls.' Mot., ECF No. 1120 [hereinafter Defs.' Opp'n], at 28–45, but the court need not resolve these fact disputes. Ultimately, none of the case features identified by Plaintiffs is a factor not already subsumed within the lodestar that could support an objectively based enhancement of it.

The Court in *Perdue* explained that, in the rare and exceptional case, superior lawyering and outstanding results (considered as a single category) "may properly provide a basis for an enhancement." 559 U.S. at 554. "[T]he quality of an attorney's performance" and the "results obtained" should be treated "as one" because "superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance." *Id.* Because the inquiry is still governed by whether any proposed enhancement is based on a consideration already covered by the lodestar, "specific evidence" is required to demonstrate "that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Id.* (quoting *Blum*, 465 U.S. at 897).

The *Perdue* Court identified three circumstances in which the "strong presumption" of reasonableness of a lodestar fee could be overcome. First, enhancement is permitted where "the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Id.* at 554–55. Second, "if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted," enhancement may be reasonable. *Id.* at 555. And third, in "extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees," enhancement may be needed. *Id.* at 556.

These three circumstances are plainly foreclosed to Plaintiffs in this case, and they do not seriously contend otherwise. The parties' three stipulations "*completely and finally resolved*" any claim based on (1) unreasonable delay in payment, (2) the hourly rate used to calculate the lodestar

"not reflect[ing] counsel's true market value," and (3) the sufficiency of interest paid on interim fee awards.  Third Joint Stip. at 1 (emphasis added).  The stipulations track almost exactly the language in *Perdue* describing the first and third circumstances enabling enhancement.

Unable to rely on the *Perdue* exemplars, Plaintiffs have identified various other reasons to justify an enhancement of the lodestar, including the significant hardships that their counsel faced during the litigation, certain key strategic decisions their counsel made, and various policy reasons.  Pl.'s Mot. at 12–36.  Specifically, the proffered reasons include: (1) mastery of voluminous and complex documentary evidence, *id.* at 13; (2) "monumental resistance" by the federal government defendant, *id.* at 17; (3) exceptional success under "severe time constraints," *id.* at 22; (4) the "undesirable" quality of the case, *id.* at 30; (5) the social impact of the case, *id.* at 31; (6) enhancements awarded in comparator cases, *id.* at 32; and (7) the need to induce competent counsel to represent victims of discrimination, *id.* at 34.  As to each of these factors, Plaintiffs cite mostly out-of-circuit cases as authority to enhance the award.  *See* Pls.' Reply Brief in Supp. of Lodestar Enhancement, ECF No. 1121 [hereinafter Pls.' Reply], Ex. 5, ECF No. 1121-5 (chart summarizing primarily out-of-Circuit, pre-*Perdue* cases).  But nearly all of the cases are pre-*Perdue*, therefore their persuasive value is minimal.  In fact, Plaintiffs have not cited a single post-*Perdue* case in which a court enhanced a lodestar for exceptional attorney performance.[7]  As the discussion below shows, *Perdue* largely rebuts each factor on which Plaintiffs rely.

---

[7] The sole post-*Perdue* case cited in Plaintiffs' chart is *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015), but that case is wholly inapposite.  There, the parties *agreed* to an enhancement of the lodestar, and the Fourth Circuit rejected a class member's objection to the negotiated fee.  *See id.* at 617–18.  The court also applied an extremely deferential standard of review—in which a stipulated fee award "must not be overturned unless it is clearly wrong"—and only cited to *Perdue* once, in passing in a footnote.  *Id.* at 617 (quotation omitted), *id.* at 618 n.10.  This court has conducted its own review and has found only one post-*Perdue* case in which a court granted an enhancement of the lodestar.  *See Kelly v. Wengler*, 822 F.3d 1085, 1104–05 (9th Cir. 2016).  But in that case, the trial court determined that the Prison Litigation Reform Act's hourly rate cap was inadequate to attract component counsel and the plaintiffs' counsel demonstrated through "specific evidence" that he was the only lawyer in the state willing to take on prisoner litigation seeking only injunctive and declaratory relief.  *See id.  Kelly* bears no resemblance to this case.

*Mastering Voluminous and Complex Proof.* Plaintiffs assert that counsel achieved extraordinary success by mastering voluminous materials and devising creative strategies that led to the success they achieved in this litigation. Pls.' Mem. at 13–17. The Supreme Court has made clear, however, that hard work and superior or creative lawyering is not a basis for enhancement. While "brilliant insights and critical maneuvers sometimes matter far more than hours worked or years of experience," "the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." *Perdue*, 559 U.S. at 555 n.5 (quoting *Blum*, 465 U.S. at 898); *see also id.* at 563–64 (Breyer, J., concurring in part and dissenting in part) (describing the voluminous record that a minority of justices believed justified an enhancement, but the majority did not deem appropriate). Moreover, the complexity and voluminous nature of the record materials will be reflected in the overall number of hours billed. *Id.* at 553.

Plaintiffs repeatedly cite to numerous laudatory statements of the Special Master regarding their mastery of the record as proof of the superiority of counsel's representation. Pls.' Mem. at 14–16. The court does not quarrel with those descriptions; they are undoubtedly true. But the Court in *Perdue* rejected such "an impressionistic basis" for an enhancement. *Id.* at 558 (holding that "insofar as the District Court relied on a comparison of the performance of counsel in this case with the performance of counsel in unnamed prior cases, the District Court did not employ a methodology that permitted meaningful appellate review"). The court therefore cannot base an enhancement on the Special Master's observations about counsel's superior performance.

*Monumental Resistance.* The *Perdue* majority also rejected an opponent's dogged resistance as a basis for an enhancement. A minority of justices in *Perdue* voted to affirm the enhancement in part because the eight-year-long litigation was "arduous," the state had "met the plaintiffs' efforts with a host of complex procedural, as well as substantive, objections," and it had

9

committed tremendous resources to opposing the suit. *Id.* at 567–68. The majority, however, did not deem overcoming the state's aggressive defense and staunch resistance to warrant an enhancement. This court cannot either.

*Severe Time Limitations.* Plaintiffs explain that, after an unexpected change of the law and the D.C. Circuit's rejection of class certification, counsel acted "swiftly," and successfully, to add female plaintiffs in other job categories to recertify the class. Pls.' Mem. at 23–26. They also point out that counsel were "constantly juggling competing demands" and routinely faced "severe time crunches" throughout the *Teamsters* process. *See id.* at 26, 28. The court does not doubt that counsel operated under severe time pressures at various points of the litigation. But what Plaintiffs fail to show is how such work is not already reflected in the lodestar—particularly through additional hours billed—and, importantly, Plaintiffs cannot rely on this factor as "providing an objective and reviewable basis for fees." *Perdue*, 559 U.S. at 558.

*Controversial or Undesirable Cases.* Plaintiffs also posit that, because this case was considered "unwinnable" after an initial loss on the merits early on in the case, the case qualifies as controversial or undesirable. Pls.' Mem. at 28–31. This argument is flawed for a few reasons. First, Plaintiffs fail to identify a *post*-Perdue case in which the unpopular nature of the controversy or client has warranted an enhancement. *See id.* Indeed, there is scant pre-*Perdue* case law awarding enhancements in controversial or undesirable cases. *See, e.g.*, *Guam Soc'y of Obstetrics & Gynecologists v. Ada*, 100 F.3d 691 (9th Cir. 1996) (abortion case in small, predominantly Catholic community). As Plaintiffs admit, this case does not present comparable facts.

Second, and as importantly, Plaintiffs fail to identify specific evidence demonstrating that the case was undesirable, even on their proffered basis. This type of evidence is required. *See, e.g.*, *H.D.V. – Greektown, LLC v. City of Detroit*, 660 F. App'x 375, 386–87 (6th Cir. 2016) (holding

that enhancement for an unpopular cause—adult entertainment—was not merited because there was no "specific evidence" presented to show attorneys taking on these types of cases could not obtain adequate compensation). The only arguably specific evidence presented by Plaintiffs is that the case appeared "unwinnable" due to an initial loss on the merits at the beginning of the case. Pls.' Mem. at 28. But a quality enhancement *was* previously awarded in this case for the very period when the case faced this setback. *See supra* n.4. And after overcoming it, the addition of "big firm" lawyers to the team in 1992 (Crowell & Moring LLP) shows that, at least by then, the case was no longer deemed so unwinnable as to prevent attracting competent counsel.

*Societally Significant Case*. Plaintiffs point out that their victory brought about major changes to the federal agency where the discriminatory conduct occurred, the Voice of America (now the U.S. Agency for Global Media). Pls.' Mem. at 31–32. That is no doubt true. *Perdue*, however, rejected the social significance of the case as a basis for enhancement. The justices in the *Perdue* minority would have affirmed the enhancement, in part, for that reason, *see Perdue*, 559 U.S. at 568 (minority observing that the case had brought about "comprehensive reform of [the state's] foster-care system, to the benefit of children in many different communities" and "significant positive results"), but the majority concluded otherwise. The positive societal impact of Plaintiffs' victory cannot be measured objectively to warrant an enhancement.

*Similar Awards*. Plaintiffs also urge the court to compare this case to others in which counsel achieved "exceptional results." Pls.' Mem. at 32–34. Among the cases they cite are *Wing v. Asarco Inc.*, 114 F.3d 986 (9th Cir. 1997), and *Deloach v. Phillip Morris Cos.*, 2003 WL 23094907 (M.D.N.C. 2003), which they argue "are instructive" comparators. *Id.* at 37–40. In *Wing*, the trial court applied a 2.0 multiplier and "spoke in awe of class counsel's performance." 114 F.2d at 989; *see* Pls.' Mem. at 37–38. In *Deloach*, an antitrust case between tobacco farmers

11

and tobacco product manufacturers, the court praised "the superior professionalism and art of advocacy exhibited by the lawyers" and awarded a multiplier of 4.45. *See* 2003 WL 23094907 at \*1, \*11; *see also* Pls.' Mem. at 31–34 (citing *Shakman v. Democratic Org. of Cook Cnty.*, 677 F. Supp. 933, 948 (N.D. Ill. 1987) (applying multiplier of 1.33 based on the "enormous political and social impact" and "significant economic impact on the operations of the defendant government employees"), and *Liberales v. Daniel*, 619 F. Supp. 1016, 1022 (N.D. Ill. 1985) (awarding multiplier of 1.5 in a Title VII case that produced "one of the largest race discrimination money judgments ever paid in this country")).

The court is skeptical that Plaintiffs' proposed case-comparison approach is compatible with *Perdue*. Such an approach would produce the kind of "essentially arbitrary" results that the Court said must be abandoned in favor of "an objective and reviewable" basis to justify a lodestar enhancement. *Perdue*, 559 U.S at 557–58 ("Why, for example, did the [district] court grant a 75% enhancement instead of the 100% increase that respondents sought? And why 75% rather than 50% or 25% or 10%?"). Plaintiffs' multiplier request in this case illustrates the point. They ask the "Court to exercise its discretion and award additional fees in the range from [2.0] to 4.5 times the stipulated $19 million lodestar." Pls.' Mem. 44. Selecting a multiplier in that range, even using comparable out-of-Circuit, *pre*-Perdue cases as a guide, would be a largely subjective exercise.

In any event, the primary cases on which Plaintiffs rely, *Wing* and *Deloach*, are inapposite. The *Wing* court approved a multiplier based on "class counsel's continuing obligations to the class," regardless of whether the defendant's objections to enhancement were meritorious. 114 F.3d at 989. But here, all post-consent decree work done by Plaintiffs has been expressly excluded from the base lodestar on which an enhancement may be based. In *Deloach*, the court

12

relied upon "the results obtained" as a standalone, and the "single most important," factor in its award. 2003 WL 23094907 at *10. This approach would not have been appropriate in the D.C. Circuit even before *Perdue*. *See Thompson v. Kennickell*, 836 F.2d 616, 622 & n.5 (D.C. Cir. 1988), *overruled on other grounds by King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991). Moreover, the *Deloach* court specifically relied upon the fact that the plaintiffs' counsel in that case represented their clients without the "assistance [of] numerous other law firms." 2003 WL 23094907 at *10. That was not the case here.

*Inducement of Competent Attorneys*. Finally, Plaintiffs argue, in general terms, that "[t]he potential for enhancement encourages counsel to take on difficult cases." Pls.' Mem. at 36. That is surely true. But the Supreme Court has said that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Perdue*, 559 U.S. at 552. That is the fee that Plaintiffs' counsel received.

In any event, the facts of this case do not bear out the need for a multiplier to induce competent counsel. *Cf. Kelly v. Wengler*, *supra* n.7. As discussed, Plaintiffs were able to engage a large law firm and a firm that specializes in damages models without promise that they would receive an enhancement. *See* Pls.' Mem. at 19; Defs.' Opp'n at 29–30. Simply put, Plaintiffs have not come forward with specific evidence to support the contention that the lodestar and the delayed payment adjustment negotiated by the parties is not sufficient to attract competent counsel in similar cases.

*     *     *

Before concluding, the court wishes to make clear that its decision not to multiply the lodestar should not be taken to diminish the resounding success Plaintiffs' counsel achieved.

The lawyering and the result were "exceptional" by any metric, as that term is ordinarily construed. That praise may be cold comfort. But this court can do no more.

In his dissenting opinion in *Perdue*, Justice Breyer asked, "If this is not an exceptional case, what is?" *Perdue*, 559 U.S. at 571. Plaintiffs have asked this court a similar question here. *See* Pls.' Mem. at 43 ("If not this case, what circumstances could ever present facts warranting a multiplier?"). This court's answer is the same as the majority's in *Perdue*: this is not the "rare" or "exceptional" case in which "specific evidence" supports an "objective and reviewable basis" for enhancement of the lodestar.

## VI.

For the foregoing reasons, the court denies Plaintiffs' Motion for a Lodestar Enhancement, ECF No. 1118.

Dated: March 31, 2023

Amit P. Mehta
United States District Court Judge